UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

CRISTIAN C. RIVERA CASALLOS, and
Alejandra Herrera as next friend,

               Petitioner,

     v.

RAUL MOLDONADO, JR., in his official
capacity as Warden, Brooklyn Metropolitan
Detention Center, New York, et al.,

               Respondents.

**MEMORANDUM & ORDER**
26-CV-04175 (HG)

**HECTOR GONZALEZ**, United States District Judge:

On July 1, 2026,[1] Petitioner Cristian Rivera Casallos, a Colombian citizen, was arrested by U.S. Immigration and Customs Enforcement ("ICE") and detained at the Metropolitan Detention Center in Brooklyn ("MDC").  ECF No. 1 ¶¶ 1–2 (Petition).[2]  On July 13, 2026, Petitioner, proceeding *pro se* through his next friend and partner Alejandra Herrera, filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241.  *See generally id.*  Petitioner argues that his detention violates his First and Fifth Amendment rights, the Immigration and Nationality Act ("INA"), and the Administrative Procedure Act ("APA").  *Id.* ¶¶ 61–71, 76–92.  Respondents oppose the Petition.  *See* ECF No. 5 (Opposition).  For the reasons set forth below, the Court holds that Petitioner's detention violates his Fifth Amendment due process rights and therefore GRANTS the Petition.

---

[1]     Petitioner asserts that he was arrested by ICE officers on June 30, 2026, *see* ECF No. 1 ¶ 2, but Respondents filed a Form I-213 indicating that Petitioner was arrested on July 1, 2026, *see* ECF No. 5-8 at 2.

[2]     Unless otherwise indicated, when quoting cases and the parties' papers, the Court omits all internal quotation marks, alteration marks, emphases, footnotes, and citations.  The Court refers to the pages assigned by the Electronic Case Files system ("ECF").

**BACKGROUND**

I.     **Petitioner's Entry into the United States, Arrest, and Expedited Removal Order**

Petitioner is a 28-year-old Colombian citizen who works for DoorDash.  ECF No. 1 ¶¶ 1, 28.  On April 15, 2023, Customs and Border Protection ("CBP") officers arrested Petitioner in the Rio Grande Valley, Texas, Border Patrol Sector, after determining he had unlawfully entered the United States from Mexico.  ECF No. 5-1 ¶ 3 (Declaration of Deportation Officer Shkelzen Dega); ECF No. 5-2 (Form I-213; Exhibit A).  Petitioner was then transported to the Rio Grande Valley Sector Centralized Processing Center in McAllen, Texas.  ECF No. 5-1 ¶ 3.  During his processing, Petitioner admitted that he crossed the border illegally on April 15, 2023, and he claimed a fear of persecution or torture in his home country of Colombia.  ECF No. 5-1 ¶ 4; ECF No. 5-3 at 2 (Record of Sworn Statement; Exhibit B).

The same day, April 15, 2023, CBP issued a Notice and Order of Expedited Removal pursuant to 8 U.S.C. § 1225(b)(1).  ECF No. 5-1 ¶ 5; ECF No. 5-4 (Notice and Order of Expedited Removal; Exhibit C).  The document charged Petitioner as inadmissible for lack of proper documentation.  *See* ECF No. 5-4 at 1; 8 U.S.C. § 1182(a)(7)(A)(i)(I) (deeming inadmissible any noncitizen who, at the time of application for admission, lacks valid entry documents).  A few days later, on April 19, 2023, Petitioner was transferred to the IAH Secure Adult Detention Facility in Livingston, Texas.  ECF No. 5-1 ¶ 6.

II.     **Petitioner's Asylum Claim and Notice to Appear**

Because Petitioner expressed a fear of returning to his home country, an asylum officer from the U.S. Citizenship and Immigration Services ("USCIS") conducted an interview with Petitioner, as required by law, to determine whether his fear was "credible."  *Id.*; *see* 8 U.S.C. § 1225(b)(1)(A)(ii).  That interview took place on April 29, 2023, through a Spanish interpreter,

and on April 30, 2023, the asylum officer made a "positive credible fear finding," or a determination that Petitioner's claim of fear was credible.  ECF No. 5-1 ¶ 6.

On May 2, 2023, the U.S. Department of Homeland Security ("DHS") served Petitioner with a Notice to Appear ("NTA") for standard (non-expedited) removal proceedings pursuant to 8 U.S.C. § 1229a, through which he would be afforded the opportunity to apply for asylum.  *Id.* ¶ 7; *see* ECF No. 5-5 (NTA; Exhibit D).  The NTA classified Petitioner as a noncitizen "present in the United States who has not been admitted or paroled" rather than an "arriving alien."  ECF No. 5-5 at 1.  Further, the NTA charged Petitioner as removable under 8 U.S.C. § 1182(a)(6)(A)(i), which deems inadmissible a noncitizen "present in the United States without being admitted or paroled, or who arrives in the United States at any time or place other than as designated by the Attorney General," and 8 U.S.C. § 1182(a)(7)(A)(i)(I), which deems inadmissible a noncitizen who, at the time of application for admission, lacks valid entry documents.  *Id.*

### III.    Petitioner's Humanitarian Parole and Asylum Application

Also on May 2, 2023, ICE granted Petitioner one-year humanitarian parole pursuant to 8 U.S.C. § 1182(d)(5)(A), which permits the Secretary of Homeland Security to exercise his discretion to temporarily parole into the United States noncitizens for "urgent humanitarian reasons or significant public benefit."  ECF No. 5-1 ¶ 8; *see* ECF No. 5-6 (Interim Notice Authorizing Parole; Exhibit E).  Pursuant to Petitioner's "Interim Notice Authorizing Parole," which indicates that his parole would automatically terminate after one year, Petitioner was released from detention and paroled into the United States.  ECF No. 5-1 ¶¶ 8–9; *see* ECF No. 5-6 at 1.

Almost a year later, on April 17, 2024, Petitioner applied for asylum and withholding of removal.  ECF No. 5-1 ¶ 11; *see* ECF No. 1 at 22–25.  On May 2, 2024, Petitioner's one-year parole automatically expired.  ECF No. 5-1 ¶ 12.

### IV.    Petitioner's Arrest, the Instant Petition, and Respondents' Opposition

On May 5, 2026, ICE issued a Form I-200, "Warrant for Arrest of Alien," and arrested Petitioner on July 1, 2026, after finding probable cause to believe he is removable.[3]  *Id.* ¶¶ 15, 17; *see* ECF No. 5-7 (Form I-200; Exhibit F); ECF No. 5-8 (Form I-213; Exhibit G).  The Form I-200 was issued "pursuant to section[] 236 . . . of the [INA]," which is codified at 8 U.S.C. § 1226.  ECF No. 5-7 at 1.  After an initial detention in Newburgh, Petitioner was detained at the MDC on July 10, 2026, where he remains detained.  ECF No. 5-1 ¶¶ 17, 19.

Petitioner filed this petition for a writ of habeas corpus on July 13, 2026, through his next friend and partner, Alejandra Herrera, seeking his immediate release.  *See* ECF No. 1 ¶¶ 5–6, 8.  Petitioner asserts that his detention violates his First and Fifth Amendment rights, the INA, and the APA.  *Id.* ¶¶ 61–71, 76–92.  His primary argument is that he is unlawfully detained because ICE officers failed to conduct an individualized custody determination or afford Petitioner notice or an opportunity to be heard.  *See id.* ¶¶ 5, 25, 64–65, 89, 91.

The same day, July 13, 2026, the Court issued an Order directing Respondents "to show cause by 4:00 p.m. on July 16, 2026, in writing, why the petition should not be granted, and why

---

[3]    Petitioner asserts that he has no criminal record, ECF No. 1 ¶ 2, but according to Respondents, Petitioner was previously arrested on December 24, 2025, for Grand Larceny in the Fourth Degree, in violation of New York Penal Law ("NYPL") § 155.30(1), and Criminal Possession of Stolen Property in the Fourth Degree, in violation of NYPL § 165.45(2), and on April 25, 2026, for Driving While Intoxicated, in violation of New York Vehicle and Traffic Law ("NYVTL") § 1192.3, and Driving While Intoxicated Per Se, in violation of NYVTL § 1192.2, ECF No. 5-1 ¶¶ 13–14.  There is no indication in Respondents' submissions that Petitioner has ever been convicted of a crime.

Respondents should not be ordered to immediately release Petitioner from detention, in light of the Second Circuit's holding in *Cunha v. Freden*, 175 F.4th 61, 96 (2d Cir. 2026)." July 13, 2026, Text Order. The Court further directed Respondents to "address whether Petitioner is being detained pursuant to 8 U.S.C. § 1225 or § 1226." *Id.*

After the Court granted Respondents' request to extend the deadline to respond to the Petition, *see* July 15, 2026, Text Order, Respondents filed a response on July 20, 2026, *see* ECF No. 5. Respondents principally argue that Petitioner is not entitled to the safeguards provided for Section 1226(a) detainees because he is subject to mandatory detention pursuant to Section 1225(b)(1)(B)(ii). *Id.* at 7. Respondents further argue that the Second Circuit's decision in *Cunha* does not apply because that case involved a petitioner detained under Section 1225(b)(2)(A) after residing in the United States for many years before encountering immigration authorities. *Id.* at 8. Petitioner did not file a reply.

As discussed below, the Court agrees with Petitioner.

## **LEGAL STANDARD**

Petitioner initiated this action pursuant to 28 U.S.C. § 2241, which "authorizes a district court to grant a writ of habeas corpus whenever a petitioner is 'in custody in violation of the Constitution or laws or treaties of the United States.'" *Wang v. Ashcroft*, 320 F.3d 130, 140 (2d Cir. 2003) (quoting 28 U.S.C. § 2241(c)(3)). "Federal courts have jurisdiction to hear habeas corpus claims by non-citizens challenging the constitutionality of their detention." *Lopez v. Sessions*, No. 18-cv-4189, 2018 WL 2932726, at *6 (S.D.N.Y. June 12, 2018) (citing *Demore v. Kim*, 538 U.S. 510, 516–17 (2003)). Such jurisdiction, however, "is properly limited to purely legal statutory and constitutional claims and does not extend to review of discretionary determinations by immigration judges." *Id.*; *see* 8 U.S.C. § 1226(e).

5

## DISCUSSION[4]

### I.      Legal Framework

#### A.      Mandatory Detention Under Section 1225(b)(1)

Section 1225(b)(1) provides for an "expedited removal" procedure, which "substantially shorten[s] and speed[s] up the [ordinary] removal process" under Section 1229a. *Rodriguez-Acurio v. Almodovar*, 811 F. Supp. 3d 274, 291 (E.D.N.Y. 2025). "[P]eople subject to expedited removal are [also] subject to mandatory detention," *id.* at 293, and release is permitted only "for urgent humanitarian reasons or significant public benefit," 8 U.S.C. § 1182(d)(5)(A).

For Section 1225(b)(1) to apply, noncitizens must satisfy two criteria. First, the noncitizen must be "inadmissible" under Section 1182(a)(6)(C), based on fraud or willful misrepresentation of a material fact, or Section 1182(a)(7), based on lack of proper entry documents. 8 U.S.C. § 1225(b)(1)(A)(i). Second, the noncitizen must either: (1) be "arriving in the United States," *id.*, or (2)(a) "not [have] been admitted or paroled into the United States," (b) "not [have] affirmatively shown . . . that [they have] been physically present in the United States continuously for the 2-year period immediately prior to the date of the determination of inadmissibility," and (c) be "designated" for mandatory detention and expedited removal by the Attorney General, *id.* § 1225(b)(1)(A)(iii)(I)–(II). Pursuant to its authority under the statute, the Attorney General, through the DHS Secretary,[5] has "designated" all noncitizens who fall into

---

[4]      The Court adopts the legal framework and analysis in Judge Chen's decision in *Nimaga v. Francis*, No. 26-cv-2868, 2026 WL 1656049 (E.D.N.Y. June 8, 2026).

[5]      This decision refers to the Attorney General, the DHS Secretary, and DHS interchangeably, as "Congress has empowered the Secretary [of DHS] to enforce the [INA]." *Nielsen v. Preap*, 586 U.S. 392, 397 n.2 (2019).

categories (2)(a) and (b) as subject to mandatory detention and expedited removal. *Id.* § 1225(b)(1)(A)(iii)(I); *Nimaga*, 2026 WL 1656049, at *4 n.5.

Where a noncitizen "indicates either an intention to apply for asylum . . . or a fear of persecution," the immigration officer must refer the noncitizen "for an interview by an asylum officer." 8 U.S.C. § 1225(b)(1)(A)(i)–(ii). "If the officer determines at the time of the interview that [a noncitizen] has a credible fear of persecution . . . the [noncitizen] shall be detained for further consideration of the application for asylum." *Id.* § 1225(b)(1)(B)(ii).

> B.    *Discretionary Detention Under Section 1226(a)*

Section 1226(a), on the other hand, provides for discretionary detention of noncitizens "already in the country pending the outcome of removal proceedings." *Jennings v. Rodriguez*, 583 U.S. 281, 289 (2018). The Second Circuit recently held that Section 1226(a) "applies to noncitizens . . . who are present in the United States, but charged as inadmissible for entering the country without inspection and admission." *Cunha*, 175 F.4th at 73. Under this discretionary detention framework, DHS: (1) "may continue to detain" a noncitizen arrested on a warrant issued by DHS; (2) "may release" the noncitizen on "bond"; or (3) "may release" the noncitizen on "conditional parole." 8 U.S.C. § 1226(a)(1)–(2).

Moreover, Section 1226(a)'s implementing regulations "delegate to DHS officers the authority to grant bond or conditional parole, and pursuant to such authority, a DHS officer must make an individualized determination as to whether detention is appropriate." *Rodriguez-Acurio*, 811 F. Supp. 3d at 316. That individualized determination is based on whether the noncitizen is (1) a "danger to property or persons" and (2) "likely to appear for any future proceeding." *Id.* (citing 8 C.F.R. § 1236.1(c)(8)). The noncitizen has an "opportunity to appeal a detention decision by the DHS officer . . . to an immigration judge who then conducts their

own assessment of the noncitizens' flight risk and dangerousness." *Id.* at 316–17; *see Cunha*, 175 F.4th at 72.

## II.    Analysis

Like the majority of courts in this Circuit and across the country, the Court holds that "a noncitizen like Petitioner, who was initially detained under Section 1225(b)(1) but later granted parole under [Section] 1182(d)(5)(A) . . . is not subject to expedited removal and mandatory detention under Section 1225(b)(1) after the parole expires." *Nimaga*, 2026 WL 1656049, at *5 (collecting cases).

### A.    Petitioner is Not "Arriving" in the United States

First, Petitioner does not qualify for mandatory detention under Section 1225(b)(1) based on any status as an "arriving" noncitizen, *see* 8 U.S.C. § 1225(b)(1)(A)(i), because Petitioner arrived in this country on April 15, 2023, more than three years before the instant arrest, *see* ECF No. 5-3 at 2; ECF No. 5-8 at 2.  The Second Circuit has instructed that a present participle like "arriving" "denotes the verb's action as being in progress or incomplete at the time expressed by the sentence's principal verb." *Cunha*, 175 F.4th at 77.  In *Cunha*, the court applied that logic to the statutory text "seeking admission," *see* 8 U.S.C. § 1225(b)(2)(A), and found that it "refers to a noncitizen who is seeking admission *right now*, not one who sought admission in the past but no longer is," 175 F.4th at 77.  The same is true here.  Because Petitioner "has already arrived, was paroled, entered, and has now been present in the United States for over [three] year[s]," he is not "arriving" in the United States for purposes of Section 1225(b)(1)(A)(i). *Qasemi v. Francis*, No. 25-cv-10029, 2025 WL 3654098, at *6 (S.D.N.Y. Dec. 17, 2025).

Even a few weeks after Petitioner's arrival in the United States, DHS no longer classified him as "an arriving alien."  ECF No. 5-5 at 1 (NTA categorizing Petitioner instead as "an alien

present in the United States who has not been admitted or paroled"). If DHS itself did not understand Petitioner to be "an arriving alien" then, he certainly is not one now, more than three years later.

B.      *Petitioner Was Paroled into the United States*

Nor is Petitioner eligible for mandatory detention under Section 1225(b)(1)(A)(iii)(II) because he has been paroled into the United States. Indeed, Respondents acknowledge that Petitioner was granted one-year humanitarian parole under Section 1182(d)(5)(A), ECF No. 5-1 ¶ 8, and they attach the Interim Notice Authorizing Parole as an exhibit, *see* ECF No. 5-6. "The fact that [Petitioner] was paroled into the United States precludes application of this provision, regardless of whether that parole has since expired." *Nimaga*, 2026 WL 1656049, at *5.

\*          \*          \*

To sum up, a noncitizen is not subject to mandatory detention under Section 1225(b)(1) unless they are either "arriving in the United States," 8 U.S.C. § 1225(b)(1)(A)(i), *or* they "[have] not been admitted or paroled into the United States," among other requirements, *id.* § 1225(b)(1)(A)(iii)(II). Here, Petitioner is not arriving in the United States, and he has been paroled into the United States, so Section 1225(b)(1) does not apply to him.

C.      *Respondents' Arguments are Unpersuasive*

The Court is not persuaded by Respondents' arguments to the contrary. Respondents contend that Petitioner is properly detained under Section 1225(b)(1)(B)(ii), ECF No. 5 at 7, which mandates the detention of an asylum seeker "for further consideration of the application for asylum" if the asylum officer, at the time of the interview, makes a determination that the asylum seeker has a credible fear of persecution, 8 U.S.C. § 1225(b)(1)(B)(ii). But this purported basis for detention is revisionist history. Respondents' own documents show that they

9

issued a warrant for Petitioner's July 1, 2026, arrest "pursuant to section[] 236 . . . of the [INA]," which is codified at 8 U.S.C. § 1226, meaning Respondents themselves did not understand Petitioner to be subject to mandatory detention under Section 1225(b)(1) at the time of his arrest. ECF No. 5-7 at 1; *see Qasemi*, 2025 WL 3654098, at *12. As discussed *supra*, Section 1225(b)(1)—entitled "Inspection of aliens arriving in the United States and certain other aliens who have not been admitted or paroled"—does not apply to Petitioner, who is not arriving in the United States and has been paroled.[6]

Respondents further assert that when Petitioner's parole expired on May 2, 2024, ECF No. 5-1 ¶ 12, "his detention status reverted back to what it was at the time he had been paroled the year before—dictated by Section 1225(b)(1)(B)(ii)," ECF No. 5 at 7 (citing *Rana v. Genalo*, No. 26-cv-849, 2026 WL 1863815, at *6 (S.D.N.Y. June 29, 2026)); *see also id.* (citing *Lin v. Almodovar*, No. 25-cv-9639, 2025 WL 3706626, at *3 (S.D.N.Y. Dec. 22, 2025) (similar)). The Court disagrees with the reasoning in *Rana* and *Lin* and instead adopts the reasoning in *Nimaga*, *Qasemi*, *Rodriguez-Acurio*, and the many other cases across the Circuit and country that have rejected Respondents' argument.[7] *See Nimaga*, 2026 WL 1656049, at *5 (collecting cases); *see*

---

[6]    The regulations cited by Respondents do not alter this conclusion. *See* ECF No. 5 at 6 (citing 8 C.F.R. § 235.3(b)(2) (describing procedure for determining inadmissibility); *id.* § 235.3(b)(4) (describing asylum interview requirement); *id.* § 235.3(b)(c) (describing proceedings for certain "arriving" noncitizens); *id.* § 1208.30(g)(2)(iv)(B) (describing procedure for immigration judge's review of negative credible fear determination); *id.* § 208.30(a) (describing DHS's jurisdiction over regulations); *id.* § 208.30(d) (describing procedure for credible fear interview)).

[7]    Respondents argue that *Nimaga* is distinguishable and *Qasemi* and *Rodriguez-Acurio* are "wrongly decided." ECF No. 5 at 8–9. With respect to *Nimaga*, Respondents point out that "no affirmative or negative credible fear determination was made," whereas here, "there was an affirmative credible fear finding." *Id.* at 8–9. However, neither Judge Chen's analysis in *Nimaga*, nor the Court's analysis here, turns on whether there was a credible fear finding. Rather, the cases turn on whether the petitioners were "arriving" in the United States or paroled

*also O.F.B. v. Maldonado*, 810 F. Supp. 3d 394, 402 (E.D.N.Y. 2025) (rejecting argument that petitioner, who had "been living in the United States for years" and whose parole expired, reverted back to his status as "seeking admission" to the United States under Section 1225(b)(2)(A)).[8]

In support of this argument, Respondents cite to the language in Section 1182(d)(5)(A), which provides that parole "shall not be regarded as an admission," and once parole expires, the noncitizen "shall forthwith return or be returned to the custody from which he was paroled and thereafter his case shall continue to be dealt with in the same manner as that of any other applicant for admission to the United States," ECF No. 5 at 7–8 (citing 8 U.S.C. § 1182(d)(5)(A)). Although that statutory text means that Petitioner remains an "applicant for admission" despite his parole, it does not mean that he reverted back to his status as a noncitizen "arriving" in the United States once his parole expired, nor does it mandate his detention. *See*

---

into the United States pursuant to the statutory text. *See* 8 U.S.C. § 1225(b)(1)(A); *see also Caldas v. Mullin*, No. 26-cv-3295, 2026 WL 1704957, at *1–2 (E.D.N.Y. June 12, 2026) (incorporating reasoning in *Nimaga* where immigration judge determined petitioner's fear was credible). As for *Qasemi* and *Rodriguez-Acurio*, Respondents assert that those cases "render petitioners released on humanitarian parole as no longer 'arriving aliens,' notwithstanding that *da Cunha* cited the Supreme Court decision in *Leng May Ma* for the proposition that 'noncitizens paroled in the country' are treated 'as [if] stopped at the boundary line.'" ECF No. 5 at 9. In *Leng May Ma*, however, the Supreme Court addressed the narrow question of "whether the granting of temporary parole somehow effects a change in the alien's legal status." *Leng May Ma v. Barber*, 357 U.S. 185, 188 (1958). The Court held that the "petitioner's parole did not alter her status as an excluded alien" under a prior version of the INA. *Id.* at 186. Here too, "Petitioner's parole did not alter his status as inadmissible"—the current terminology—"but that does not matter for purposes of this case, nor did it matter in *Rodriguez-Acurio* or *Qasemi*." *Nimaga*, 2026 WL 1656049, at *7 n.10.

[8]   To the extent Respondents' argument relies on the so-called "entry fiction," which treats noncitizens "who have been denied admission to the United States yet are present within its borders . . . as if stopped at the border," *Sarmiento Guerrero v. Noem*, 815 F. Supp. 3d 181, 188 (E.D.N.Y. 2025), the Court declines to apply that "sharply limited" doctrine here, *Cunha*, 175 F.4th at 86.

*Qasemi*, 2025 WL 3654098, at *6, 10 (differentiating custody, which involves a loss of "the freedoms associated with parole status," from physical detention).  Instead, the opposite is true: the very fact that Petitioner was paroled disqualifies him from mandatory detention under § 1225(b)(1)(A)(iii)(II).  *See id.* at *9.

Finally, Respondents argue that the Second Circuit's holding in *Cunha* that Section 1226(a) "applies to noncitizens . . . who are present in the United States, but charged as inadmissible for entering the country without inspection and admission," 175 F.4th at 73, is inapposite, because that case "did not address the detention authority for a noncitizen initially apprehended at the border, processed under § 1225(b)(1), paroled under § 1182(d)(5)(A), and later re[-]detained in the interior," ECF No. 5 at 8.  That argument, however, misses the forest for the trees.  "[T]his case is not meaningfully different from" *Cunha* or "the many others in which the Court has repeatedly rejected Respondents' statutory interpretation of the INA's detention provisions." *Nimaga*, 2026 WL 1656049, at *8.  "Although Respondents invoked Section 1225(b)(2)(A) then and they invoke Section 1225(b)(1) now, the outcome is the same:  the Court again holds that Section 1225(b) does not apply." *Id.*

### D. Petitioner's Detention Violates His Due Process Rights

Because Petitioner "was already in the country" when he was arrested on July 1, 2026, his detention is governed by Section 1226(a). *Cunha*, 175 F.4th at 97 (Cabranes, J., concurring).  Detention under Section 1226(a) is discretionary and requires an "individualized custody determination, prior notice, or opportunity to be heard." *Nimaga*, 2026 WL 1656049, at *8; *see Rodriguez-Acurio*, 811 F. Supp. 3d at 316–17.  Here, however, Respondents afforded Petitioner none of that process under the guise that Petitioner is properly detained under Section 1225(b)(1).  The Court disagrees and concludes that Petitioner is detained under Section 1226(a)

12

and in violation of his due process rights under the Fifth Amendment.  *See O.F.B.*, 810 F. Supp. 3d at 402–03 (applying balancing test in *Mathews v. Eldridge*, 424 U.S. 319 (1976), to conclude that petitioner's detention under Section 1226(a) violated his due process rights where he was "entitled to more process than he received"); *R.P.L. v. Maldonado*, 814 F. Supp. 3d 301, 305–07 (E.D.N.Y. 2025) (same); *Ndiaye v. Francis*, No. 26-cv-0069, 2026 WL 99930, at *3 (E.D.N.Y. Jan. 14, 2026) (same); *see also Rodriguez-Acurio*, 811 F. Supp. 3d at 312–19; *Qasemi*, 2025 WL 3654098, at *12–13.[9]

Accordingly, because the "typical remedy" for "unlawful executive detention" is "of course, release," *Munaf v. Geren*, 553 U.S. 674, 693 (2008), the government's ongoing detention of Petitioner, in the face of yet another complete failure of process, entitles him to immediate release, *see also Preiser v. Rodriguez*, 411 U.S. 475, 484–85 (1973) ("[R]elease from illegal custody" is the "usual remedy by which a man is restored again to his liberty, if he ha[s] been against law deprived of it.").

## CONCLUSION

For the reasons stated above, Petitioner's detention violates the Due Process Clause of the Fifth Amendment, and his petition for a writ of habeas corpus is GRANTED.  *See* ECF No. 1.

Respondents are directed to immediately release Petitioner from custody and are further directed to certify compliance with the Court's Order by filing a letter on the docket no later than 5:00 p.m. today, August 6, 2026.

The Court further orders that Petitioner shall not be re-detained without notice and an opportunity to be heard at a pre-deprivation bond hearing before a neutral decisionmaker, where

---

[9]   Because the Court finds that Petitioner's detention violates his Fifth Amendment due process rights, the Court need not address the parties' remaining arguments.

Respondents will have the burden of showing by clear and convincing evidence that his

detention is authorized under 8 U.S.C. § 1226(a).  *See J.C.G. v. Genalo*, No. 24-cv-08755, 2025

WL 88831, at *7 (S.D.N.Y. Jan. 14, 2025) (collecting cases where courts ordered that the

government bear the burden of demonstrating by clear and convincing evidence that

discretionary detention was justified).  This Order includes "an injunction barring deprivation [of

any] of the [Petitioner's] rights without the requisite procedural protections."  *Khabazha v.*

*United States Immigr. & Customs Enf't*, No. 25-cv-5279, 2025 WL 3281514, at *8–9 (S.D.N.Y.

Nov. 25, 2025) (ordering government release petitioner from "restrictions on his liberty imposed

as a result of his unlawful [detention] . . . including the ankle monitor and reporting

requirements" and return petitioner to "the status quo ante").

      The Clerk of Court is respectfully directed to enter judgment consistent with the Order

and close the case.

      SO ORDERED.

> */s/ Hector Gonzalez*
> HECTOR GONZALEZ
> United States District Judge

Dated: Brooklyn, New York
      August 6, 2026

14